<hr />

## JOEL WARD AND OTHERS: APPEAL FROM PROBATE.

*H*, in the year 1844, being sick, conveyed certain real estate to her sister *N*, as a provision for her minor daughter in case she should not recover. *N* executed a bond to re-convey to *H* in the event of her recovery. The bond was deposited by *N* in a trunk used by them in common for keeping valuable papers. Both regarded it as binding without any other act. After the recovery of *H* no demand was made on *N*, who died in 1865, having shortly before conveyed the land to *W*. Held, 1. That there was a sufficient delivery of the bond. 2. That the statute of limitations did not begin to run against the bond until *N* had been requested to re-convey, or had put it out of her power to do so by conveying to another.

APPEAL from the allowance by commissioners on the estate of Nancy Ward, of a claim in favor of Huldah Peck. The following facts were found by an auditor, to whom the case was referred.

On the 12th of February, 1844, Huldah Peck, then Huldah Hawley, conveyed to the decedent, Nancy Ward, three pieces of land in the town of Southbury. They were sisters, and at that time were living with their parents in Southbury. On the trial she offered to prove, by parol testimony, that at the time of the execution and delivery of the deed she was very

sick and not expected to live, and that wishing to provide for the support of a minor daughter, she made the deed to her sister Nancy upon consideration that Nancy should take care of and support her daughter in case she did not recover, but if she should recover, that then Nancy should re-convey the land.   She recovered from her sickness in three or four weeks, and Nancy never expended any thing for the support of the daughter.

If parol testimony should be held admissible to prove the consideration upon which the deed was made and the promise to reconvey, then the auditor found that such promise to re-convey was made, and that the only consideration for the deed was the agreement by Nancy to support the child.   Otherwise he found that there was no promise to re-convey, and made no finding whatever as to the consideration upon which the deed was made.

Shortly after the execution of the deed and before Huldah had recovered from her sickness, Nancy procured a bond to be drawn, which was duly executed by her, wherein she obligated herself to re-convey the land mentioned in the deed, according to the terms of the above mentioned parol agreement. This bond was never delivered into the manual possession of Huldah, but was placed by Nancy in a trunk, which was used by Huldah, Nancy, and their father, in common, as a safe place of deposit for their valuable papers.   Huldah never had any other possession of the bond.   Both Nancy and Huldah supposed the bond was valid and binding without any further act.   The appellants claimed, as matter of law, that these facts could not constitute a delivery of the bond.   If such claim should be held correct, then the auditor found that the bond was never delivered, but if not correct, that the bond was sufficiently delivered.   The bond had been destroyed.

Nancy Ward died in 1865, having shortly before her death conveyed to the appellants all her real estate, including the three pieces of land conveyed to her by Huldah.

The appellants also claimed that the right to recover under the bond was barred by the statute of limitations.   If the law should be held to be so that the bond was legally delivered,

and the right to recover under the same not barred by the statute of limitations, it was found that the estate of Nancy Ward was indebted to Huldah Peck in the sum of $450; but that if upon either of these points the claim of the appellants was correct, the estate was not indebted to her.

The questions arising on the report of the auditor and on the facts found were reserved for the advice of this court.

*Huntington,* for the appellants.

*O. S. Seymour* and *Cothren,* for the appellee.

PARK, J. We are satisfied that the bond was sufficiently delivered. The case finds that the obligor put the bond into a trunk used by herself in common with the obligee, as a safe depository for their valuable papers, and that neither of them supposed that any further act was necessary to give it validity.

The only fact that raises any doubt respecting the delivery is the circumstance that the trunk was used in common by the parties. If the trunk had been used by Huldah alone there could have been no doubt respecting the act of Nancy; it would be clear that she intended to deliver the bond, and that she did so in fact by placing it within the trunk. Putting it there under such circumstances would be placing it in the possession of Huldah for her use and benefit. But Nancy used the trunk in common with Huldah, and she might therefore have placed the bond in the trunk for safe keeping until such time as she might feel disposed to deliver it. It is this that creates whatever doubt there is in the case. Now if the facts of the case show that the bond was placed in the trunk for no such purpose, then all doubt respecting the delivery would be removed. The case finds that Nancy supposed that she had done all that was essential to make the bond good and valid. She had procured it to be drawn according to the terms of the agreement. She had duly executed it, and after placing it within the trunk considered that her duty to her sister was accomplished. This shows that the bond was placed in the trunk for the immediate use and benefit of her sister, and not for the purpose of safe keeping for future delivery

should she feel so disposed. She put it there as a valid instrument binding on her, intending and expecting that her sister should and would take it into her possession and use it for the purpose for which it was made. The case further finds that her sister knew it was there for her use and benefit, for she too regarded it as a valid instrument. This shows that the obligee accepted the instrument, although her acceptance under the circumstances would have been presumed.

We think the bond was sufficiently delivered.

The appellants claim that the statute of limitations has run against the claim of the appellee. They insist that Nancy was bound by the conditions of the bond to re-convey the property within a reasonable time after the recovery of her sister from her sickness, and that the fact that she neglected so to do created a breach of the bond for which a suit could have been immediately brought and maintained; and that consequently from that time the statute commenced to run. The appellee claims that Nancy, receiving the conveyance under the conditions stated in the bond, was not bound to re-convey the property until the form of a deed of re-conveyance was presented to her, and she requested to execute it, and that, inasmuch as such presentation and request were never made, the statute never commenced running against the claim until Nancy put it out of her power to comply with the conditions of the bond by conveying the property to the appellants. We think the claim of the appellee is correct. It appears in the case that Nancy received the conveyance at the solicitation of Huldah, who desired to make in this way provision for her minor daughter in case she should not recover from her sickness. This was the sole inducement to the conveyance on the part of Huldah, and her wishes were acquiesced in by Nancy. The relation of Nancy to the transaction was that of one conferring a favor. Under such circumstances, upon the recovery of Huldah, Nancy was not bound to re-convey the property until requested to do so. Her relation was very different from that of one who for a valuable consideration had bound himself absolutely to convey certain property. She received the conveyance at the request of the grantor to accomplish a certain

purpose, should a certain event happen. The event never happened, and she was left with the legal title. Her duty then was to be ready and willing to execute a deed of re-conveyance, whenever requested so to do, in a proper manner, at a proper time and place, on the presentation of a proper form of a deed. The business was Huldah's throughout. She put the property into the hands of Nancy to accomplish a special purpose of her own, and when that was at an end it belonged to her alone to bear the trouble and expense incident to a re-conveyance. Nancy under the circumstances would be led to suppose by the silence and indifference of her sister that she preferred that the legal title should remain as it was for the time being, and that when she desired the property returned to her she would make her wishes known. This would be a reasonable construction of the conduct of Huldah. We think therefore that no breach of the bond is shown to have existed before Nancy conveyed the property to the appellants; and consequently we advise the Superior Court to affirm the judgment of the court of probate.

In this opinion the other judges concurred.